PEOPLE v SINCLAIR

1. CRIMINAL LAW—PLEA OF GUILTY—FACTUAL BASIS—CONTROLLED
SUBSTANCES—KNOWLEDGE—ACTUAL GUILT.

Conclusive proof of the factual basis for acceptance of a guilty
plea is not required by court rule and, therefore, a court does
not commit error in accepting a guilty plea to delivery of a
controlled substance without first establishing defendant's
knowledge of the correct chemical identity of the controlled
substance, where both the substance defendant testifies he
believed he was delivering and the substance he was actually
delivering have the same classification under the Controlled
Substances Act, and the facts elicited substantially support a
finding that defendant is indeed guilty of a violation under the
act (MCLA 335.301; GCR 1963, 785.7).

2. CRIMINAL LAW—PLEA OF GUILTY—POSSIBLE DEFENSES—EXPLANA-
TION OF DEFENSES—DETERMINATION OF DEFENSES.

A court need not reject a guilty plea merely because there are
discrepancies in the evidence which indicate possible defenses
to the crime, nor is it required to explain possible defenses to a
defendant or explore and establish whether a defense exists
before accepting such plea.

3. CRIMINAL LAW—PLEA OF GUILTY—CONSTITUTIONAL LAW—COURT
RULES.

A court, on a constitutional basis, should not refuse a plea of
guilty where all requirements of the court rule are met, regard-
less of whether it was offered before, at the end of, or during
trial (GCR 1963, 785.7).

Appeal from Ingham, Jack W. Warren, J. Sub-
mitted Division 2 December 2, 1974, at Lansing.
(Docket No. 19777.) Decided February 13, 1975.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law § 484 et seq.
  Admissibility of plea of guilty at preliminary hearing. 141 ALR
  1335.
[3] 21 Am Jur 2d, Criminal Law § 492.

Michael Sinclair was convicted, on his plea of guilty, of delivery of lysergic acid diethylamide (LSD). Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General; *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodeller,* Prosecuting Attorney, and *Lawrence J. Emery,* Assistant Prosecuting Attorney, for the people.

*Burwell & Shrank,* for defendant on appeal.

Before: D. E. HOLBROOK, P. J., and R. B. BURNS and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. The defendant pled guilty to delivery of a controlled substance, lysergic acid diethylamide, contrary to MCLA 335.341(1)(b); MSA 18.1070 (41)(1)(b).

On February 1, 1973, defendant allegedly sold the controlled substance to an undercover police officer at 106 Beech Street in Lansing, Michigan. At trial, this officer testified that defendant had offered to sell him drugs which defendant said were mescaline. The unlawful transaction was completed when defendant extracted four blue pills from a vial containing similar pills and delivered them to the undercover officer at $1.00 apiece. This testimony by the police officer completed the first day of trial.

On the second day of trial, defendant offered to plead guilty to unlawful delivery of lysergic acid diethylamide (LSD) in exchange for the prosecutor's dismissing another charge against him. This plea bargain had been agreed to by the prosecutor and consequently the trial court proceeded to accept the guilty plea. In establishing a factual basis

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

for the guilty plea, defendant stated that he had delivered pills to one Kathy Mason, who in turn gave the drugs to the undercover police officer in defendant's presence. However, defendant apparently was not aware that the drugs were LSD since he had been told they were mescaline as is indicated in the following colloquy:

"*Q. (by the court):* Now, earlier you said, 'I told her I had some chemicals, I didn't know what it was'. Did you suspect what it was?

"*A. (by defendant):* Yes, I did.

"*Q.* What did you suspect it was?

"*A.* I suspected it was mescaline.

"*Q.* Why did you suspect it was mescaline?

"*A.* That's what I was told when it was given to me.

"*Q.* I gather there's a difference between mescaline and LSD?

"*A.* Yes sir.

\* \* \*

"*Q. (by the court, continuing):* Well, let me ask you, Mr. Sinclair. At that time, you've told me you didn't really know what it was but you thought it to be mescaline, is that correct?

"*A.* Yes, sir.

"*Q.* Did you have any reason to believe that it might also be LSD?

"*A.* No, I believed what I was told.

"*Q.* How do you distinguish between LSD and mescaline?

"*A.* Actually, there's no way except for word of mouth."

Later, the trial court again questioned defendant about the chemical nature of the delivered drugs in order to establish defendant's knowledge that they were LSD. Defendant replied evasively, however, and never acknowledged that he knew the

drugs he had delivered to the undercover police officer were LSD.

Moreover, during the plea taking defendant maintained that the pills he had delivered to the undercover officer were white instead of blue like the pills introduced into evidence against him at trial. The court advised defendant that this difference could constitute a defense on which a jury might acquit him. But, defendant replied that he doubted the jury would acquit him on that basis and therefore he still wanted to plead guilty.

In this appeal, defendant contends that the trial court erred in accepting his guilty plea without establishing the correct chemical identity of the controlled substance and his knowledge thereof. Also, defendant argues that the trial court erred in accepting his guilty plea where his statement to the court indicated a discrepancy in the authenticity of the evidence which would constitute a valid defense at a trial.

In regard to defendant's first contention, it should be noted initially that both mescaline and LSD are hallucinogenic substances which have the same classification in the Controlled Substances Act, MCLA 335.314(c); MSA 18.1070(14)(c). Similarly, unlawful delivery of either substance is subject to the same penalty.

The pertinent court rule, GCR 1963, 785.7(3)(c), provides that a court shall not accept a guilty plea "until it is satisfied that *a crime* was committed" and:

"If defendant's description of his actions and any otherwise admissible evidence presented to the court on the record during the plea taking proceedings would not substantially support a finding that defendant is in fact guilty of the charged offense or the offense to which he is pleading, the plea shall be rejected by the court."

Quite clearly, this carefully drafted rule does not require certain proof of any specific crime at a guilty plea proceeding. Rather, the requisite proof is that which will substantially support a finding, to the satisfaction of the trial court, that defendant is guilty. of the charged offense or the offense to which he is pleading. When the trial court is satisfied that the facts *substantially* support a finding that defendant is indeed guilty of a crime, the court may accept the guilty plea.

In the instant case, the evidence was overwhelming at the trial and at the subsequent plea proceedings that defendant had participated in a violation of MCLA 335.341(1)(b); MSA 18.1070(41)(1)(b). There was some doubt at the guilty pleading as to whether the controlled substance unlawfully delivered was mescaline or LSD. Defendant said he "suspected" the substance in question was mescaline on the basis of his vendor's representations, but defendant admitted he had no method of independently determining the identity of the substance. Since no contention has been made that defendant misunderstood the nature of the charge against him, it can be reasonably concluded that defendant accepted the police analysis that the substance was LSD, albeit at the time of the unlawful delivery defendant suspected it was mescaline. Indeed, when defendant's statements at the plea proceeding are carefully considered, none of them directly contradicts this conclusion.

In these circumstances, the record of the plea proceeding does substantially support a finding that defendant is in fact guilty of violating MCLA 335.341(1)(b); MSA 18.1070(41)(1)(b). Conclusive proof of a factual basis for the guilty plea is not required by the court rule despite defendant's contentions in this appeal to the contrary.

As to defendant's other contention of error based on an alleged difference in the coloration between the pills unlawfully delivered and those introduced into evidence at trial, it is well established that a court need not reject a guilty plea merely because there are discrepancies in the evidence which indicate possible defenses to the crime. The pertinent court rule, GCR 1963, 785.7(1)(a), does not even oblige the trial court to explain possible defenses to a guilty-pleading defendant, and *a fortiori* does not require a court to explore and establish whether a defense exists. The principle is well stated in *People v Garcia,* 36 Mich App 141, 142; 193 NW2d 187, 188 (1971):

"Where defendant is represented by counsel, the trial court need not make exhaustive examination as to the possible defenses, even if the testimony of the accused gives some indication that defenses might have been raised at trial."

*Accord, People v Neal,* 38 Mich App 586; 196 NW2d 789 (1972).

In passing, we note that some prosecuting attorneys, in order to save needless expense and inconvenience to witnesses and jurors, have adopted a policy of not acquiescing in the acceptance of guilty pleas at the beginning of or during trial. While this may be practical, it would be difficult indeed for a court, on a constitutional basis or otherwise, to refuse a plea where all the requirements of the court rule are met. Moreover, in view of the ever-increasing number of guilty plea appeals to this Court, we feel constrained to urge most respectfully that trial judges employ meticulous care, even to the extent of having a check-off system if necessary, in order to be certain that each and every requirement of the court rule is complied with.

Affirmed.